# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRELL THOMPSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-10658-WBV-JVM** |
| **HAMMOND CITY, ET AL.** | **SECTION: "D" (1)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by defendants, the City of Hammond, Officer Leo Barthelemy and Sergeant Quinn Bivona (collectively, "Defendants").[1] The Motion is opposed,[2] Defendants have filed a Reply,[3] and Plaintiff has filed a Sur-Reply[4] and a Supplemental Memorandum in Opposition to the Motion.[5] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Terrell Thompson's claim that members of the Hammond Police Department falsely arrested and imprisoned him after a physical altercation with his daughter's former boyfriend. Plaintiff alleges that on November 7, 2017, Hunter L. Musacchia, a former boyfriend of Plaintiff's minor daughter, J.E.T., traveled to Plaintiff's residence in Hammond, Louisiana to pick up his boat, which

---

[1] R. Doc. 17.
[2] R. Doc. 20.
[3] R. Doc. 30.
[4] R. Doc. 40.
[5] R. Doc. 59.

Hunter had been keeping at Plaintiff's residence.[6] Plaintiff claims that when he arrived home after work in his law enforcement uniform,[7] armed, he noticed Hunter's vehicle parked at his residence and became concerned because he believed that Hunter had previously used illegal drugs and had physically abused and stalked J.E.T.[8] Plaintiff asserts that he exited his vehicle and approached Hunter's vehicle, whereupon he tapped on the tailgate, but received no response. Plaintiff claims he then approached the passenger side of Hunter's vehicle, peered into the window, and observed two people, whom Plaintiff identified as J.E.T. and Hunter, struggling. Plaintiff claims that he tried to open the vehicle door, but it was locked, so he tapped on the passenger-side window using his flashlight. At that point, Plaintiff asserts that Hunter exited the driver-side of the vehicle.

Plaintiff alleges that Hunter walked to the front of his vehicle and began angrily screaming and cursing at Plaintiff, flailing his arms, and putting his hands within arms' reach of the Plaintiff's head, all while J.E.T. remained in the vehicle.[9] Plaintiff claims that Hunter then aggressively charged toward him, causing Plaintiff to believe that he was in imminent danger of receiving a battery.[10] In response, Plaintiff claims that he struck Hunter in the left common peroneal of his leg with his mag flashlight in self-defense, in accordance with his 26 years of law enforcement training.[11] Plaintiff asserts that Hunter momentarily retreated, but then

---

[6] R. Doc. 1 at ¶ 8.
[7] Plaintiff claims that he is a United States Custom and Border Patrol agent. *Id*. at ¶ 7.
[8] *Id*. at ¶ 12.
[9] *Id*. at ¶ 16.
[10] *Id*. at ¶ 17.
[11] *Id*. at ¶ 17.

aggressively charged at Plaintiff a second time, whereupon Plaintiff again struck Hunter in the leg with his flashlight in self-defense.[12]  Plaintiff alleges that Hunter then grabbed him and the two men fell to the ground in a struggle.  Plaintiff claims that he freed himself, proceeded to Hunter's vehicle, turned the ignition off and took possession of Hunter's keys.  Plaintiff alleges that J.E.T. then exited the vehicle while Plaintiff called the Hammond Police Department and Hunter called his father, Brad Mussachia.  Plaintiff asserts that, at some point, he recorded a statement on his cell phone wherein J.E.T. stated that Hunter struck her.[13]  Brad Mussachia subsequently arrived at Plaintiff's home, and Plaintiff told Mr. Mussachia that Hunter was not permitted to be at his home other than to obtain his boat, and that Hunter was not allowed to speak to J.E.T.

Hammond Police Department officers arrived at Plaintiff's home shortly thereafter, with defendant, Sergeant Quinn Bivona, being one of the first officers to arrive.[14]  Plaintiff claims that Sgt. Bivona spoke to Hunter and J.E.T., and that when Plaintiff offered Sgt. Bivona the recorded statement on his cellphone, Sgt. Bivona refused it and ordered Plaintiff to remain inside his home.[15]  Plaintiff asserts that at some point, his wife, Lisa Thompson, and her minor daughter, S.T., entered the front yard of Plaintiff's home.[16]  Plaintiff alleges that two more Hammond Police Department officers arrived at his home – defendant, Officer Leo Barthelemy, Jr.,

---

[12] *Id*. at ¶ 18.
[13] *Id*. at ¶ 21.
[14] *Id*. at ¶ 24.
[15] *Id*.
[16] *Id*. at ¶ 25.

and Officer Mary Ellis. Plaintiff claims that he tried to give them a statement and told Officer Barthelemy that he had been collecting information on Hunter to obtain a restraining order against him, but that Officer Barthelemy and Sgt. Bivona refused to speak to Plaintiff about what had transpired.[17] Plaintiff also claims that the officers refused to obtain Plaintiff's statement and denied his request that a Hammond Police Department Shift Lieutenant come to the scene. Plaintiff alleges that Officer Barthelemy and Sgt. Bivona then received Plaintiff's duty weapon and a back-up weapon, which were both on his person. Although Hunter was allowed to leave the scene, Plaintiff claims that he was arrested for aggravated battery under La. R.S. 14:34, possession of Schedule IV drugs under La. R.S. 40:969, possession of legend drugs under La. R.S. 40:971(B)(1)(h), and illegal possession of a firearm under La. R.S. 14:95, and taken to jail.[18]

Plaintiff alleges that Sgt. Bivona and/or Officer Barthelemy authored a police report containing several false and/or misleading statements, including that Plaintiff approached Hunter's vehicle in an aggressive manner and attacked Hunter when he stepped out of the vehicle, striking Hunter in the left leg and twice in the face, and that Sgt. Bivona and Officer Barthelemy searched Plaintiff's person and found an unlabeled orange pill bottle containing several tablets.[19] Plaintiff claims that these misstatements are defamatory *per se*, as Defendants made these statements with knowledge of their falsity, or with reckless disregard for whether they were false or

---

[17] *Id*. at ¶¶ 26-28.
[18] *Id*. at ¶ 31.
[19] *Id*. at ¶ 32.

not, and without having reasonable grounds for believing in their truth.[20]  According to Plaintiff, he removed the pill bottle from his possession and offered it to Sgt. Bivona and/or Officer Barthelemy after he was taken into custody at the Hammond Police Department jail.

On November 7, 2018, Plaintiff filed a Complaint in this Court, asserting three claims: (1) a 42 U.S.C. § 1983 claim against Sgt. Bivona and Officer Barthelemy, asserting that he was arrested without probable cause in violation of his Fourth Amendment rights; (2) state law claims for false arrest and false imprisonment against Sgt. Bivona and Officer Barthelemy; and (3) a state law claim for defamation *per se* against Sgt. Bivona and Officer Barthelemy.[21]  Plaintiff further alleged that the City of Hammond is liable under *respondeat superior* for the actions of Sgt. Bivona and Officer Barthelemy during the course and scope of their employment as police officers for the Hamond Police Department.[22]

On May 23, 2019, Defendants filed the instant Motion for Summary Judgment, asserting that Plaintiff's claims for false arrest and false imprisonment fail as a matter of law because Plaintiff's arrest was based on probable cause and, therefore, there was no violation of his Fourth Amendment rights.[23]  Defendants argue that probable cause existed for the arrest based on the verbal statements of Hunter, J.E.T. and Plaintiff, given to the officers at the time of the arrest, which were confirmed by

[20] *Id*. at ¶ 33.
[21] R. Doc. 1 at ¶¶ 34-38.
[22] *Id*. at ¶ 39.
[23] R. Doc. 17.

Hunter's written statement, which was also given at the time of the arrest.[24] Defendants argue that probable cause existed for the arrest because a victim's statement alone is sufficient to create probable cause for an arrest on the grounds of battery.[25] Defendants contend that upon arriving at the scene, Officer Barthelemy met with Sgt. Bivona and then spoke to the victim, Hunter, who said that he wanted to file charges against Plaintiff.[26] Defendants allege that Hunter told Officer Barthelemy that he was in his vehicle with Plaintiff's daughter when Plaintiff approached the vehicle in an aggressive manner and struck the window of the vehicle with a Maglite flashlight.[27] Defendants claim that Hunter told Officer Barthelemy that when he exited the vehicle, Plaintiff struck him on the left leg and struck him twice in the facial area.[28] Defendants assert that Officer Barthelemy then spoke to Plaintiff, who admitted that he struck the victim with his flashlight.[29] Defendants claim that Officer Barthelemy secured two weapons located on Plaintiff's person, and found a pill bottle in connection with the arrest. Defendants maintain that they had probable cause to arrest Plaintiff.

Even if Plaintiff could establish a Fourth Amendment violation, Defendants assert that they are entitled to qualified immunity from such claims.[30] Defendants argue that the officers acted with objective reasonableness in arresting Plaintiff,

---

[24] R. Doc. 17-1 at pp. 1-2.
[25] *Id*. at p. 7 (citing *Shepack v. Tanner*, Civ. A. Nos. 96-2405, 96-2711, 1999 WL 280443 (E.D. La. May 4, 1999)).
[26] R. Doc. 17-1 at p. 2 (*citing* R. Doc. 17-2).
[27] *Id*.
[28] *Id*.
[29] R. Doc. 17-1 at pp. 2-3 (*citing* R. Doc. 17-2 at pp. 3-9)
[30] R. Doc. 17-1 at pp. 7-10.

based upon the victim's statement and Plaintiff's confirmation that he struck Hunter. Defendants emphasize that Plaintiff's actual motives at the time of the incident are irrelevant.[31]  Defendants further assert that Plaintiff's state law claims for false arrest and false imprisonment are duplicative of the federal law claims, and should be dismissed on the same basis.[32]  Defendants also claim that they are entitled to summary judgment on the defamation claims because the statements contained within the police report were obtained from Hunter and J.E.T. and, therefore, are not false, as required for a defamation action.[33]  Even if the police report contains false statements, Defendants argue that there was no unprivileged publication to a third-party, and if there was, the information in the report is protected by qualified privilege as statements of criminal conduct.[34]  Finally, Defendants assert that they are entitled to summary judgment on all claims against the City of Hammond because Plaintiff failed to identify any policy or procedure that purportedly led to the alleged constitutional violation.[35]

Plaintiff opposes the Motion, reaffirming the version of events set forth in the Complaint, and asserting that genuine issues of material fact exist as to whether Defendants had probable cause to arrest him.[36]  Plaintiff maintains that Defendants lacked probable cause to arrest him because they refused to listen to his version of

---

[31] *Id*. at p.10.

[32] *Id*. at pp. 10-11.

[33] *Id*. at p. 11.

[34] *Id*. at p. 11 (citing *Kennedy v. Sheriff of E. Baton Rouge,* 05-1418 (La. 7/10/06), 935 So.2d 669).

[35] R. Doc. 17-1 at pp. 13-14 (citations omitted).

[36] R. Doc. 20.  Plaintiff claims that the Motion contains several misstatements and/or omits certain critical facts, including where the incident occurred, whether the prescription bottle was found at the time of arrest or at the time of booking, the fact that the defendant officers never interviewed or spoke to Plaintiff about what transpired and that Plaintiff acted in self-defense.  *Id*. at pp. 1-2.

events, refused to take his statement at the time of the arrest, and relied upon his daughter's statement and inconsistent statements from victim Hunter.[37] Plaintiff argues that the cases cited by Defendants on the issue of probable cause are distinguishable from the facts of this case because Defendants did not question any eyewitnesses prior to the arrest and refused to take a statement from Plaintiff, who was an eyewitness.[38] Plaintiff also disputes Defendants' assertion that a witness statement is sufficient to establish probable cause, asserting that in the case relied upon by Defendants, the Court clarified that other factors were considered in making the probable cause determination, including corroborating statements from eyewitnesses, which do not exist in this case.[39] Plaintiff also notes that the police report fails to articulate any facts suggesting that Hunter sustained any facial injuries or needed medical attention, which would corroborate Plaintiff's arrest for aggravated battery.[40] Plaintiff asserts that, contrary to the police report, he never struck Hunter in the face. Plaintiff relies heavily upon a Declaration by J.E.T., attached as an exhibit to his opposition brief, to support this assertion.[41]

Plaintiff further asserts that Defendants are not entitled to qualified immunity because they ignored his justification that he acted in self-defense when he struck Hunter.[42] Relying heavily upon a Sixth Circuit case, Plaintiff argues that Defendants

---

[37] *Id*. at pp. 9-10.
[38] *Id*. at p. 11 (citing *Babin v. Par. Of Jefferson,* Civ. A. No. 16-2954, 2018 WL 794535 (E.D. La. Feb. 8, 2018) (Feldman, J.); *Cooper v. City of La Porte Police Dep't*, 608 Fed.Appx. 195 (5th Cir. 2015)).
[39] R. Doc. 20 at pp. 11-12 (citing *Shepack v. Tanner*, Civ. A. Nos. 96-2405, 96-2711, 1999 WL 280443 (E.D. La. May 4, 1999)).
[40] R. Doc. 20 at p. 12.
[41] *Id*. at p. 5 (*citing* R. Doc. 20-2).
[42] *Id*. at pp. 12-13 (citing *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999)).

failed to accept or acknowledge the evidence he attempted to present to show Hunter's abusive history against J.E.T., Defendants failed to acknowledge that Plaintiff was in his full United States Customs and Border Patrol uniform, which explains why he was authorized to be armed, Defendants failed to inquire into whether the medications offered to them by Plaintiff were obtained by prescriptions or were over the counter medications, and Defendants made no attempt to talk to Plaintiff or consult other witnesses beyond Hunter and J.E.T., regarding what had transpired, such as Lisa Thompson, Plaintiff's wife.[43]  As such, Plaintiff contends there are questions of fact in dispute regarding the Defendants' actions leading up to the arrest that preclude summary judgment in this case.[44]

Plaintiff similarly claims that genuine issues of material fact exist regarding his defamation claim and whether Defendants deliberately and/or recklessly falsified the police report when they intentionally ignored facts and evidence that was available to them.[45]  Plaintiff maintains that Defendants communicated false and defamatory statements regarding his arrest, including the police report, to his employer, which constitutes a publication of statements to a third party that were defamatory *per se*.[46]  Plaintiff argues that qualified privilege does not apply in this case because it was arguably abused.  Plaintiff explains that the information used by Defendants to establish probable cause was recklessly, if not purposefully, deficient

---

[43] R. Doc. 20 at p. 14.
[44] The Court notes that although Plaintiff sets forth the burden of proof for a plaintiff to overcome summary judgment based on qualified immunity (R. Doc. 20 at pp. 14-16), Plaintiff does not provide any argument or analysis as to how he satisfies that burden of proof.
[45] R. Doc. 20 at p. 18.
[46] R. Doc. 20 at p. 17.

because Defendants failed to verify any of the statements made by Hunter and they deliberately ignored Plaintiff's explanation of what had transpired.[47]  Plaintiff claims that a report of events that is deliberately incomplete is an abuse of privilege.[48]  Plaintiff argues that Defendants had "obvious reasons to doubt the accuracy of their reports" because statements by Hunter and Plaintiff, without consideration of all the facts and statements available, would make any reasonable officer doubt the accuracy of his report.[49]  Plaintiff also asserts that if his arrest is actionable under § 1983 for lack of arguable probable cause, then his defamation claims are also actionable and qualified immunity is not available.[50]

Additionally, Plaintiff asserts that the City of Hammond is not entitled to summary judgment on his state law claims for false arrest and imprisonment and defamation *per se* because Defendants moved for summary judgment on these claims under federal law.[51]  Plaintiff argues that the Louisiana Supreme Court has recognized that a municipality may be liable for torts committed by their police officers acting within the course and scope of their employment.[52]  Thus, Plaintiff claims genuine issues of material fact exist as to the claims against the City of Hammond.  Plaintiff further asserts that Defendants are not entitled to qualified immunity on his state law claims because genuine issues of material fact exist as to

---

[47] *Id*. at p. 18.
[48] *Id*. (citing *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So.2d 552, 564).
[49] R. Doc. 20 at p. 19.
[50] *Id*. (citing *Roche v. Aetna Cas. & Sur. Co.*, 303 So.2d 888, 890 (La. Ct. App. 1974)).
[51] R. Doc. 20 at p. 20.
[52] *Id*. (citing *Lamkin v. Brooks*, 498 So.2d 1068, 1070 (La. 1986)).

both claims, particularly regarding the information Defendants used in determining probable cause for his arrest.[53]

In reply, Defendants argue that Plaintiff has not shown that probable cause did not exist for the arrest, nor has Plaintiff shown that qualified immunity does not apply.[54] Defendants assert that in determining whether probable cause existed for Plaintiff's arrest, the Court must consider whether the facts and circumstances within the arresting officer's knowledge raised a fair probability that a crime had been committed.[55] While Plaintiff points to facts learned after the arrest, Defendants claim that such information, obtained with the benefit of hindsight, is immaterial, such as the location of the strike, how many times Plaintiff struck Hunter or whether the strike was justified. Defendants argue probable cause existed for the arrest because Hunter stated that Plaintiff struck him, J.E.T. confirmed that Plaintiff struck Hunter, and Plaintiff admitted at the scene that he struck Hunter.[56] Although Plaintiff claims probable cause was lacking because he was in his law enforcement uniform at the time of his arrest, Defendants argue that wearing a uniform does not require them to turn a blind eye to a reported battery, does not allow Plaintiff to carry a secondary weapon while off-duty, and does not permit Plaintiff to carry pills in an unmarked pill bottle on his person.[57] Defendants further assert that under

---

[53] R. Doc. 20 at pp. 20-21.

[54] R. Doc. 30.

[55] *Id.* at p. 2 (citing *Fillios v. Harahan Police Dep't*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019)).

[56] R. Doc. 30 at pp. 2-3.

[57] *Id.* at pp. 3-4.

controlling law, they had no duty to investigate Plaintiff's claims of self-defense prior to the arrest.[58]

Defendants further assert that qualified immunity applies, that the cases cited by Plaintiff in support of his arguments are distinguishable, and that the Court should instead follow *Babin*, wherein this Court found it immaterial whether a plaintiff complained that an arresting officer refused to hear her side of the story at the scene after speaking with the witnesses.[59] With respect to Plaintiff's defamation claim, Defendants assert that Plaintiff failed to produce any evidence showing that Defendants sent the police report to Plaintiff's employer, noting that Plaintiff produced a video during discovery demonstrating that Plaintiff's wife caused the report to be sent to Plaintiff's employer.[60] Finally, citing again to *Babin*, Defendants assert that the City of Hammond can only be liable for its own acts under § 1983, and cannot be held liable under a theory of *respondeat superior*.[61] Defendants argue that a municipality will only be held liable where a policy or procedure was the moving force behind the constitutional violation, and Plaintiff has failed to cite any policy or procedure that the City of Hammond implemented that purportedly contributed to the alleged constitutional violation.[62] Defendants claim that the case relied upon by

---

[58] *Id.* at p. 5 (citing *McCoy v. Hous. Auth. Of New Orleans*, Civ. A. No. 15-398, 2016 WL 2992528 (E.D. La. May 24, 2016)).

[59] R. Doc. 30 at pp. 6-7 (citing *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999); *Blake v. Lambert*, 921 F.3d 215 (5th Cir. 2019); *Babin v. Par. Of Jefferson,* Civ. A. No. 16-2954, 2018 WL 794535 (E.D. La. Feb. 8, 2018)).

[60] R. Doc. 30 at p. 8 (*citing* R. Doc. 30-1, filed under seal).

[61] R. Doc. 30 at p. 9 (citing *Babin*, Civ. A. No. 16-2954, 2018 WL 794535, at *12).

[62] R. Doc. 30 at p. 9 (citing *Babin*,

Plaintiff concerned only an intentional tort committed by a police officer outside of the city's jurisdiction and, therefore, is inapplicable to the facts of this case.[63]

In a Sur-Reply brief, Plaintiff seeks to correct several alleged misstatements made by Defendants in their Reply brief, and maintains that genuine issues of material fact exist regarding (1) whether probable cause existed at the time of his arrest and (2) whether qualified immunity applies.[64]  Plaintiff also maintains that Defendants failed to consider all of the information that was available at the time of his arrest, including whether Plaintiff acted in self-defense.[65]  Plaintiff asserts that qualified immunity does not apply because he was arrested without probable cause and his arrest was objectively unreasonable in light of clearly established law.[66]  While conceding that it is undisputed that he struck Hunter,[67] Plaintiff maintains that material issues of fact exist regarding whether he acted in self-defense, which is critical to the probable cause analysis.  Plaintiff reasserts the arguments raised in his opposition brief regarding his defamation claim and his state law claims against the City of Hammond.[68]

On October 22, 2019, Plaintiff filed a Supplemental Memorandum in Opposition to the Motion for Summary Judgment, to apprise the Court of the Fifth Circuit's recent decision in *Cole v. Carson*, wherein the Fifth Circuit concluded that summary judgment is inappropriate where an excessive force claim turns on two

---

[63] R. Doc. 30 at pp. 9-10 (citing *Lamkin v. Brooks*, 498 So.2d 1068 (La. 1986)).
[64] R. Doc. 40.
[65] *Id*. at pp. 1-2.
[66] *Id*. at pp. 7-8.
[67] *Id*. at p. 7.
[68] R. Doc. 40 at pp. 9-10.

conflicting stories of what transpired.[69]  Plaintiff points out that the Fifth Circuit in *Cole* further held that the district court did not err in denying the defendant police officers qualified immunity at the summary judgment stage.[70]

## II.    LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.[71]  No genuine issue of material fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.[72]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[73]  Additionally, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[74]  While all reasonable inferences are drawn in favor of the non-moving party, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.[75]

Summary judgment is also proper if the non-moving party fails to establish an essential element of a claim, upon which that party will bear the burden of proof at

---

[69] R. Doc. 59 (citing *Cole v. Carson*, 935 F.3d 444, 455-56 (5th Cir. 2019)).

[70] R. Doc. 59 at p. 1 (quoting *Cole*, 935 F.3d at 457).

[71] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[72] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

[73] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[74] *Anderson*, 477 U.S. at 247-47, 106 S.Ct. at 2510.

[75] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation and quotation marks omitted).

trial.[76]  The non-moving party must, therefore, direct the Court's attention to specific evidence in the record which demonstrates that he can satisfy a reasonable jury that he is entitled to a favorable verdict.[77]  In determining whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.[78]  The Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[79]  Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so, "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[80]

## III.  LAW AND ANALYSIS

### A. Section 1983 Liability of Sgt. Bivona and Officer Barthelemy and Qualified Immunity.

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.  Specifically, it provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any  .  .  .  person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[81]

---

[76] *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552.

[77] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[78] *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774-75, 167 L.Ed.2d 686 (2007).

[79] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[80] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quotation and quotation marks omitted).

[81] 42 U.S.C. § 1983.

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[82]  To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[83]

As a defense to § 1983 claims, government officials may invoke qualified immunity, which "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[84]  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[85] "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[86]

"This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[87]  Once the government

---

[82] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[83] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[84] *Mabry v. Lee County*, 100 F.Supp.3d 568, 572 (N.D. Miss. 2015) (quoting *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *cert. granted, decision rev'd on other grounds*, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)).

[85] *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (internal quotation marks omitted).

[86] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

[87] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted).

official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[88] To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[89] It is up to the district courts' sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.[90]

In his § 1983 claim, Plaintiff alleges that Sgt. Bivona and Officer Barthelemy violated his Fourth Amendment rights to be free from false arrest and false imprisonment. The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause.[91] Thus, to prevail on a § 1983 claim based on false arrest Plaintiff must show the arresting officers lacked probable cause to arrest him.[92] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[93] This Court has held that probable cause means a "fair probability" that a crime has been committed.[94] According to the

---

[88] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[89] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

[90] *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.

[91] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

[92] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004).

[93] *Id.* at 655-56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation marks omitted).

[94] *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)); *Babin v. Par. Of Jefferson,* Civ. A. No. 16-2954, 2018 WL 794535, at *8 (E.D. La. Feb. 8, 2018) (citing *Haggerty*, 391 F.3d at 656

Fifth Circuit, Plaintiff must clear a significant hurdle to defeat Defendants' assertion of qualified immunity because, "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost."[95]  Additionally, although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark."[96]

Here, Plaintiff was arrested for (1) aggravated battery against Hunter, in violation of La. R.S. 14:34; (2) aggravated battery against J.E.T., in violation of La. R.S. 14:34; (3) possession of a Schedule IV drug, in violation of La. R.S. 40:969; (4) possession of legend drugs, in violation of La. R.S. 40:971(1)(H); and (5) illegal possession of a firearm in violation of La. R.S. 14:95.[97]  The summary judgment briefs, however, focus on Plaintiff's arrest for aggravated battery against Hunter.   As Defendants point out,[98] the Fifth Circuit has clarified that, "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest."[99]  The Fifth Circuit has further explained that, "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails."[100]  Accordingly, the

---

(noting that "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

[95] *Haggerty*, 391 F.3d at 656 (citation omitted).

[96] *Garcia*, 179 F.3d at 269.

[97] R. Doc. 17-2 at p. 3.

[98] R. Doc. 17-1 at pp. 6-7.

[99] *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

[100] *Price*, 256 F.3d at 369 (quoting *Wells*, 45 F.3d at 95) (internal quotation marks omitted) (emphasis in original).

Court will focus on whether there was probable cause to arrest Plaintiff for aggravated battery against Hunter.

Under Louisiana law, aggravated battery is defined as the intentional use of force or violence upon the person of another with a dangerous weapon.[101] Defendants argue that they had probable cause to arrest Plaintiff for aggravated battery against Plaintiff because Hunter gave an oral and written statement to the arresting officers at the scene, stating that Plaintiff struck him twice in the leg and twice in the face with a flashlight,[102] J.E.T. gave an oral statement to the arresting officers at the scene confirming that Plaintiff struck Hunter,[103] and Plaintiff himself admitted to officers at the scene that he struck Hunter in the leg.[104] Defendants claim that it is immaterial where Plaintiff struck Hunter, how many times he struck Hunter, or whether the strike was justified, and that probable cause existed for the arrest because Plaintiff admitted at the scene that he committed a battery on Hunter.[105] In contrast, Plaintiff claims that Hunter was the aggressor and that he struck Hunter in self-defense. Plaintiff argues that if the Defendants had obtained a statement from Plaintiff or any eyewitness at the scene of the altercation, no reasonably competent

---

[101] La. R.S. 14:33; La. R.S. 14:34.
[102] R. Doc. 17-2 at pp. 6, 10.
[103] The Court notes that while Defendants assert that J.E.T. gave an oral statement to Officer Barthelemy at the scene (R. Doc. 17-1 at p. 7; R. Doc. 30 at p. 3), neither Officer Barthelemy's police report nor Sgt. Bivona's Affidavit, both attached to the Motion for Summary Judgment, mention that the officers obtained a verbal statement from J.E.T. at the scene. *See* R. Doc. 17-2 at pp. 6-7; R. Doc. 17-3.
[104] R. Doc. 30 at p. 3 (*citing* R. Doc. 17-2 at pp. 3-9; R. Doc. 17-3).
[105] R. Doc. 30 at p. 3.

officer could have found probable cause to arrest Plaintiff for aggravated battery against Hunter.[106]

As this Court previously explained, "A police officer faced with conflicting facts and eyewitness testimony does not necessarily lack probable cause for arrest simply because one party insists that her version of the facts is correct – even if that party claims at the time that she acted in self-defense."[107]  The Fifth Circuit has expressly declined to address whether evidence of an affirmative defense, such as self-defense, is relevant to a determination of probable cause.[108]  However, "District courts within the Fifth Circuit, as well as other Circuits that have considered this issue have held that an affirmative defense is relevant to the probable cause inquiry, but that an official is under no duty to investigate a plaintiff's claimed defense."[109]  "In other words, a police officer may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense."[110]

Here, Plaintiff attempts to support his self-defense argument with a Declaration of J.E.T., dated June 16, 2019, and submitted with Plaintiff's opposition

---

[106] R. Doc. 20 at pp. 7, 9-11.
[107] *McCoy v. Housing Auth. Of New Orleans*, Civ. A. No. 15-398, 2016 WL 2992528, at *17 (E.D. La. May 24, 2016).
[108] *Mabry v. Lee County*, 100 F.Supp.3d 568, 573 (N.D. Miss. 2015) (citing *Piazza v. Mayne* 217 F.3d 239, 246-47 (5th Cir. 2000); *United States v. Craig*, 381 Fed.Appx. 459, 461 (5th Cir. 2010)); *McCoy*, Civ. A. No. 15-398, 2016 WL 2992528, at *17 (citing *Piazza*, 217 F.3d at 246-47; *Craig*, 381 Fed.Appx. at 461).
[109] *Mabry*, 100 F.Supp.3d at 574 (citing *Dressner v. Crowe*, Civ. A. No. 13-81, 2013 WL 5236658, at *3 (E.D. La. Sept. 16, 2013; *Thomas v City of Galveston, Tex*, 800 F.Supp.2d 826, 835 (S.D Tex. 2011)); *McCoy*, Civ. A. No. 15-398, 2016 WL 2992528, at *17 (quoting *Mabry*, 100 F.Supp.3d at 574).
[110] *Mabry*, 100 F.Supp.3d at 574 (quoting *Thomas*, 800 F.Supp.2d at 835) (internal quotation marks omitted); *McCoy*, Civ. A. No. 15-398, 2016 WL 2992528, at *17 (quoting *Thomas*, 800 F.Supp.2d at 835).

brief to the Motion.[111]  In it, J.E.T. states that Hunter "angrily charged at Mr. Thompson while screaming obscenities at Mr. Thompson, appearing as if he wanted to fight him," and that, "In response, Mr. Thompson then struck Hunter somewhere on the leg, after which time they came at each other and grabbed each other's shirts."[112]  Plaintiff, however, has not pointed the Court to any evidence showing that J.E.T. gave similar statements to Sgt. Bivona or Officer Barthelemy at the scene of the altercation regarding who initiated the altercation.  While both parties assert that J.E.T. spoke to officers on the scene,[113] and Defendants have provided a police report reflecting a statement from J.E.T. to a police officer concerning other allegations, neither side has presented evidence to show what J.E.T. told the officers regarding the altercation which led to Plaintiff's arrest.[114]  Because Plaintiff has provided no evidence from which the Court can ascertain that Sgt. Bivona and Officer Barthelemy faced "conclusively established evidence" at the time of the arrest that Plaintiff had an affirmative defense, the Court declines to find that the officers lacked probable cause for arrest solely based on Plaintiff's assertions that Hunter was the aggressor and Plaintiff was merely trying to shield himself from Hunter's attack.

Further, while Plaintiff disputes the written and oral statements given by Hunter to Defendants, Plaintiff does not dispute that Hunter gave these statements to the officers at the time of his arrest.  Instead, Plaintiff argues that his own account

---

[111] *See* R. Doc. 20-2.
[112] *Id.* at p. 2.
[113] *See* R. Doc. 20 at p. 7 (*citing* R. Doc. 20-2 at p. 2, ¶ 26); R. Doc. 17-1 at p. 7; R. Doc. 30 at p. 3 (*citing* R. Doc. 17-2 at pp. 3-9; R. Doc. 17-3).
[114] *See* R. Doc. 17-2 at pp. 3-9; R. Doc. 17-3; R. Doc. 20.

of what happened, as well as J.E.T.'s unsworn declaration after the fact, are sufficient to create an issue of fact regarding whether Defendants had probable cause to arrest Plaintiff. The Court finds, however, that it is immaterial to the probable cause determination in this case whether Plaintiff was the aggressor or whether Plaintiff actually committed the crimes for which he was arrested.[115] The determinative issue is whether the totality of facts and circumstances within the arresting officer's knowledge at the moment of arrest are sufficient to establish probable cause to believe that a crime was committed and that Plaintiff committed the crime.[116] The Court notes that Plaintiff was granted leave to file a Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment in which he drew the Court's attention to a recent Fifth Circuit decision, *Cole v. Carson*, 935 F.3d 455 (5th Cir. 2019).[117] The Court notes that, while the facts of that case vary greatly from those in the matter before the Court, that decision confirms "We consider only what the officers knew at the time of their challenged conduct. 'Facts which an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant.'"[118]

Here, it is undisputed that Plaintiff struck Hunter during the underlying altercation and that that fact was communicated to the officers. Defendants assert

---

[115] *Cooper v. City of La Porte Police Dept.*, 608 Fed.Appx. 195, 200 (5th Cir. 2015); *Shepack v. Tanner*, Civ. A. Nos. 96-2405, 96-2711, 1999 WL 280445, at *4 (E.D. La. May 4, 1999).

[116] *Cooper v. City of La Porte Police Dept.*, 608 Fed.Appx. 195, 200 (5th Cir. 2015) (quotation and internal quotation marks omitted); *Shepack v. Tanner*, 1999 WL 280443 (E.D. La. May 4, 1999).

[117] R. Doc. 56.

[118] *Cole v. Carson, 935 F.3d 455 (5th Circuit, 2019),* citing *Hernandez v. Mesa, ___U.S. ____, 137 S. ct. 2003, 2007 (2017).* See also *Brown v. Callahan, 623 F.3d 249, 253 ""An officer's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."*

that Plaintiff told officers at the scene that he struck Hunter in the leg,[119] and Plaintiff readily admits that he struck Hunter twice in the leg with a flashlight.[120] Thus, Hunter's written and oral statements given to officers at the time of the arrest are corroborated by Plaintiff's own statements given at the scene. This Court has previously held that a victim's statement, corroborated by other witnesses, is sufficient to support probable cause for an arrest.[121] While Plaintiff has raised disputes of fact regarding who was the aggressor in the underlying altercation, these are not disputes of material fact that preclude summary judgment.[122] The Court finds that Hunter's written and oral statements to Defendants at the time of the arrest, stating that Plaintiff struck him in the leg with a flashlight, along with Plaintiff's confirmation that he struck Hunter twice in the leg with a flashlight, gave Sgt. Bivona and Officer Barthelemy reasonable grounds to believe that Plaintiff intentionally used force upon Hunter's person with a dangerous weapon and provided probable cause for Plaintiff's arrest for aggravated battery. Accordingly, Sgt. Bivona and Officer Barthelemy are both entitled to qualified immunity with regard to Plaintiff's § 1983 claim based on an alleged Fourth Amendment violation.

## B. Plaintiff's State Law Claims of False arrest, False Imprisonment, and Defamation.

In addition to the 42 U.S.C. § 1983 claim asserted against Sgt. Bivona and Officer Barthelemy, Plaintiff has alleged state law claims against Sgt. Bivona, Officer

---

[119] R. Doc. 17-1 at pp. 2-3 (*citing* R. Doc. 17-2 at pp. 6); *See* R. Doc. 17-3 at p. 2, ¶ 11.
[120] R. Doc. 20 at p. 4;
[121] *Shepack v. Tanner*, Civ. A. Nos. 96-2405, 96-2711, 1999 WL 280445, at *4 (E.D. La. May 4, 1999).
[122] *Cooper v. City of La Porte Police Dept.*, 608 Fed.Appx. 195, 200 (5th Cir. 2015).

Barthelemy and the City of Hammond for false arrest, false imprisonment and defamation.[123]  Although the Complaint asserts these state law claims against "Defendants" generally, Plaintiff's opposition brief clarifies that, "Plaintiff asserted claims against Defendant City of Hammond ("Hammond") for violations of *Louisiana law* for (1) false arrest and false imprisonment . . . as the actions of their agents Defendants Bivona and Barthelemy caused Plaintiff to be arrested without probable cause; and (ii) defamation *per se* . . . ."[124]

A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction.[125] Because the Court has dismissed the only federal law claims asserted in this case, Plaintiff's § 1983 claims against Sgt. Bivona and Officer Barthelemy, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action for false arrest, false imprisonment and defamation.

For the reasons stated above, the Court finds that Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claims against Sgt. Bivona and Officer Barthelemy based upon an alleged Fourth Amendment violation, and the claims are hereby dismissed with prejudice.  Because no federal law claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[123] R. Doc. 1 at ¶¶ 37-39.
[124] R. Doc. 20 at p. 19.
[125] 28 U.S.C. § 1367(c)(3).

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [126] is **GRANTED.    IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 claims against Sergeant Quinn Bivona and Officer Leo Barthelemy, Jr. are **DISMISSED WITH PREJUDICE** and Plaintiff's state law claims for false arrest, false imprisonment, and defamation are **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, December 30, 2019.

**WENDY B. VITTER**
**United States District Judge**

---

[126] R. Doc. 17.